One moment. Thank you, Mr. Creedy. Proceed. Thank you. My name is Ben Creedy and I'm pleased to be here on behalf of Ronald Buckler today. Mr. Buckler was a miner who was working in the Ewing Quarry in Amazonia, Missouri in June 2011 when he was rendered quadriplegic while removing a jam in a rock-crushing machine along with his co-workers. I have filed a federal tort claims act against the United States, which is directed at the acts and omissions of MSHA inspectors and their failure to do what's required of them under the Mine Act and under their own regulations and handbooks. The district court dismissed the case for lack of subject matter jurisdiction on primarily the ground that we had not met the private analog requirement under Missouri law. In other words, showing that Missouri law would impose negligence liability on private persons doing similar actions to what the mine inspectors do. And we believe that is error. We believe it's error for a couple reasons. First of all, the fact that Missouri law, just like West Virginia law in the Bragg case that I think is very illustrative here, would impose liability based on foreseeability. Let me interrupt you. The West Virginia case is a West Virginia Supreme Court case, right? That's correct. There's no Missouri Supreme Court case, they're all court appeals cases, right? That's correct. Let's say a workplace safety inspector doing inspections for the purpose of ensuring the safety and health of the workers at that workplace. There's been no Missouri case that I'm aware of that's done that. There are several cases that have... Well, what about the Plank case? The Plank case? The UE case? You know that case? The court appeals case? I'm not familiar with that. I'm sorry it's mentioned in the PLANK? What's that? I'm sorry. It's the Plank case, Union Electric's nuclear case. But go ahead. If you don't know it, just proceed. Yes, Your Honor. There are several cases that have said safety inspections or inspections can be negligent based on the foreseeability ground. That would be the Newell versus Rubbermaid case, Otis, the Davidson versus Otis elevator case, Fisher versus Central Lead case. Actually, Fisher involved an inspection of a mine that failed to determine that a mining roof was unsafe. So those are cases which would be analogous to the situation here. But the general principles of Missouri law are that if a person that can foresee a danger and ordinarily would would take precautions to guard against it, that that is enough to establish a In this case, what's particularly important is the mine inspectors are safety professionals. So a professional standard of care would apply to them and would guard their actions. And under Missouri law, it's plain that professionals are required to act in accord with their skills, experience, knowledge, and understanding. And so for that reason alone, we believe that Missouri law would impose liability on a safety inspector doing safety inspections at a workplace because of the foreseeability standard. Do you have to show that he actually inspected that this particular machinery and saw it in operation and saw the alleged safety defect? I mean, I don't know how often they jam. Does this happen once a day, once an hour, once every three weeks? Do you have to show that he actually was aware of the safety violation and ignored it? I would need to be the proof would need to be that that he undertook to make an inspection or that he did make an inspection and that he had his failure either to do an adequate inspection led to the fact that he didn't discover the defect or if he did discover the defect that that was that was negligent because he ignored it. I don't believe that I have to prove he actually found it. I think it's sufficient for being able to prove that by virtue of the fact that he didn't do the adequate inspection, he was he wasn't he was negligent. Well, how do you how do you prove what's an adequate inspection? I mean, what this sort of I think spills over into the discretionary function defense. So how what what do you have to prove to show that they spent an X number of hours there or that they looked at everything or or what? Well, their handbook says they have to review all the machinery. They have to look at all the machinery and make an inspection. And so this particular condition that the defect was severed hydraulic hoses which were in plain sight. And so what our argument is is that was an imminent danger because it was a it was cut off or disabled the safety feature in the machine which was the jam clearing device that was built into the machine. So it was open and obvious in other words that that was there. Now the fact that it's an imminent danger that involves purely safety considerations. And under the the Sixth Circuit's Myers case, they said that because it's MSHA applying their safety policy which has already been established by Congress and by the Secretary of Labor, that there's no discretion left to take into consideration economic, social, and political policy. Well, you mentioned the West Virginia case which is great for you, but the Myers case you mentioned is conflict if we sided with you and based on that case, right? The Myers case actually for the discretionary function exception is favorable to us. When they looked at the private analog situation, they interpreted Tennessee law which was which would go against us. But what I'm saying is with respect to that discrete issue, that Missouri law would find that there is negligence. In addition on the negligence or the private analog, there are two Missouri cases that go to the duty by undertaking, which is a totally discreet and independent duty. And those those cases were ignored by both the district court and by the government. The first case is Brown versus Michigan Miller insurance company where a safety inspection was done on a grain bin facility. They failed to determine that there was an explosion hazard and tell the owner of the grain bin facility to stop it. In that case, the the court said that the failure of the inspector to catch the defect and do anything about it was negligent and increased the risk of harm. Notably in that case, the risk was the same before the inspection and after the inspection. It was the fact that the inspector failed to do anything about it, which was created a liability and increased the condition was allowed to persist and it was allowed to, every time the workers were around it, the the chance of something bad happening was growing and occurring. So that that is a private analog there, Brown versus Michigan Miller. Another private analog is Missouri Court of Appeals decision in Berliner versus Milwaukee Tool Company. In that case, there was a fall from a man lift which had occurred and what the court said is that the reliance element was established under the restatement section by simple virtue of the fact that the worker continued to do their job in reliance on the the equipment being made safe. Of course, in that in that case, the company had contracted to be responsible for safety at the plant. So boy, that's an easy case, huh? Surely they were liable. You make a contract for it. You're supposed to do everything. So that's that's very different in this case, right? Because there's no real contract between anybody here. Well, and this is true. I don't think that's this positive. In fact, in Berliner, one of the things that they distinguished is a defendant in that case and said we can't be liable because the employer is primarily responsible for the safety and the Court of Appeals said no, no, no. That would eliminate potential liability under Missouri law for third parties, which is not consistent with Missouri law. Here we have a situation where we have shared responsibility. I agree that the mine owners in this case have responsibility. So do the product manufacturers. So do other contractors that come on site and do work. But this is a shared responsibility case and that that is our point. There is nothing in the Mine Act or in the handbooks or the regulations which goes against there being liability for shared responsibility. So those are all private analogs and I think it's a situation where Missouri law would clearly support based on general principles and on the cases that have been decided that a private person performing safety inspections of workplace to ensure safety has to has a duty of care. And they have a duty because they're safety professionals and they have a duty to act in accord with their training, skills and experience. I'll reserve my argument. Certainly. You certainly may. Mr. Sparks. May it please the court. My name is Matt Sparks and I represent the United States Department of Transportation. Two independent grounds sufficiently warrant affirmance of the district court's determination that the United States has not waived its sovereign immunity in this FTCA case. Under the first ground, Missouri law would not impose liability against a private party for the negligent inspection of a mine. In particular, the United States does not owe the appellant a duty under Missouri law. Do we have to in essence say that the Missouri Court of Appeals was wrong in Brown versus Michigan Millers to reach that result? Is that case reconcilable with your position? It is, your honor. And it kind of goes to the foreseeability argument proposed by the plaintiff. Under Missouri law, foreseeability is not the only factor to trigger the existence of a duty. It is certainly the paramount factor. But first, the appellant must establish that there is the existence of a relationship that gives rise to that duty. And for example, mine owners owe their employees a duty of care, and that was directly addressed by the district court in this case. In the Brown case as well, I'm not entirely familiar with the facts as I stand here right now, but I believe there was a specific relationship that gave rise at issue in that case. Well, the relationship was that the inspector in Brown worked for the insurance company, and essentially the insurance company said, if you want our safety inspector to come in and inspect your premises, we'll give you a break on your premiums. And they failed to detect or advise of a safety problem that resulted in a grain explosion. Right. And there, the defendants were hired specifically to inspect the plant. And so they assumed... Your employees are hired specifically to inspect the plant, or the mine, aren't they? That's where the rubber meets the road in the government's position in this case of why it is distinguishable from the Brown decision, is because under the Mine Act, under 30 USC 801E, it expressly states that the primary responsibility for protection of the miners, it relies or is, goes to the miners and the mine operators. And so that's why the Good Samaritan doctrine is at play, and in particular Restatement Section 324A, because the appellant must prove that the mine inspectors in this particular case, had they been standing in the shoes of private parties, would have completely assumed the duty of the mine inspectors... I mean, sorry, the duty of the mine owners to protect their employees. I don't think that's what Brown says. I don't think that they say you supplant the duty, I think they just say that you supplement the duty. And once again, I'm not fully aware with the direct particulars of that the Good Samaritan doctrine expressed under 324A, which is when a voluntary undertaking is performed to render services to a third party, here the miners and not the mine operators or the mine owners, that one of the elements the plaintiff must prove is either that the mine inspectors, the government assumed the quarry's duty to protect, which the reason stated they did not, or that the MSHA inspectors affirmatively increased the risk of harm, or the third part is that the appellant has detrimentally relied. And all three of those elements, let me rephrase it a different way, none of those elements were alleged to be true in the complaint in this case, and the subject matter jurisdiction defense that was raised for this particular issue was a facial attack in the essence that a duty did not exist under Missouri law. But in particular on this issue, the Barnes case, this court's decision in the Barnes case is particularly instructive. There, this court interpreted Missouri law regarding liability for negligent inspections by the government standing in the shoes of private parties. And this court determined that federal inspectors do not owe the appellant a duty to inspect under Missouri law. And thus, there was the lack of the duty deprived the subject matter jurisdiction of the court. Sorry, deprived the court of subject matter. Barnes is chickens, and how goods are chickens, and it's a sanitary quality of the chicken, the product that's being produced. This doesn't deal with the coal, by analogy. This, I think that, now don't mishear me, the Barnes opinion's mandatory on us, but I think a lot of that just doesn't apply to this case. Because that's what they're saying time and again about what's really going on there is to protect the public from unsanitary chicken. Yes, Your Honor, and I think that exact question shows why it's particularly important of the question before this court, is the second branch of the Good Samaritan Doctrine, Section 324A. In Barnes, the plaintiff was the plant, the poultry plant owner and operator. And thus, the undertaking, the voluntary undertaking, the inspection done at the plant was done, the services were rendered to Barnes as the owner of that plant. And this court found that the Good Samaritan Doctrine under Section 323 was not applicable because the purpose of those inspections, the purpose of that undertaking, was for the public's benefit and not for the benefit of the operator, the owner of the plant. So here, that's the distinguishing characteristic from the case of why we believe, the government believes, that Section 323 of the Good Samaritan Doctrine, that branch isn't applicable. The government didn't render any services directly to the appellant in this case. The inspectors came on to the mine to inspect, they rendered services to the mine owners and the mine operators. And thus, the second branch of the Good Samaritan Doctrine, 324A, is applicable or applicable to the analysis because the services were rendered to a third party, being the miner. But the whole Mine Act says its main purpose is to protect the health and safety of the nation's coal and its miners, other miners. It means coal miners. Right? Yes. One of the primary purposes of the Mine Act is to improve the working conditions of the mine, as well as to improve the future growth of the industry. Protect their health and safety. Correct, Your Honor. Counsel, don't you think there's reliance by the miners on the inspection, that they would continue working? We don't, Your Honor. Knowledge of inspections happening is not enough. In order for there to be reliance under Comment E to Section 324A of the Restatement, specifically states that the plaintiff or the appellant must be induced to forego other remedies or forego other precautions. And once again, the complaint is completely void in this case of any remedies or precautions that the appellant otherwise forewent based on the inspections being performed. But even if the court were to decide that the government owed the appellant a duty in this case, the United States' sovereign immunity has not been waived because the court may also affirm dismissal under the discretionary function exception. Well, aren't some of these, isn't that a mixed bag? Because aren't some of the handbooks rules, I know some of them say every effort and bureaucratic language, but for instance, a regular safety and health inspection shall be done. It shall include inspection of all required documentation, minor training. That's not discretionary. That's pretty straightforward, huh? There are certainly within the handbook a lot of rules that are imposed by the handbook itself on the inspectors. But the first step in the analysis under the discretionary function exception is to ask what is the conduct at issue and the conduct being challenged by the plaintiff in this case. And in the minutiae, particularly with the training records Your Honor asked about, there's nothing in the directive, there's nothing, sorry, there's nothing in the manual, there's nothing in the regulations or the Mine Act that requires the inspectors to inspect every single training documentation that may have been collected by the mine operators. Well, counsel, there's a section of federal law that says if at an inspection, I'm paraphrasing but pretty close, Misha finds a working miner who has not received the training, they'll issue an order declaring the miner hazarded himself and take him out of the mine immediately. Correct. 814 G1. That's right, Your Honor, and that's a contingent obligation and that's where our brief really discussed the if-then logic of the contingent obligation. There is no evidence, absolutely no evidence before this court that the appellant has presented that any miner came across any such lack in documentation. Hold on, it says requisite, that means required, safety training. It says there'll be an inspection. It says if you find them, you'll get them out of the mine. I don't know. Where's the discretion? Tell me. Well, the discretion is, maybe I'm not entirely tracking, but to take a step back, the Mine Act and the MSHA regulations do two things. Number one, they impose obligations on the mine owner and operator with regards to safety standards, required documentation, required training documentation, and the training must be provided by the mine owners. It's not provided by the government. Then, as well, the Mine Act and MSHA regulations also impose a framework for MSHA to monitor compliance with those requirements that are imposed on the mine operators, and so for the specific language that you're referring to, Your Honor, the required documentation that the mine owner and operator is required to maintain. So, only if the MSHA inspectors come onto the mine and find that, in their inspections, that they do not have all of the required documentation, then they must issue a citation or the then-contingent language. Here, there is no evidence that any MSHA inspector, before the date of the accident, before June 9th, 2011, found that MSHA, found that the mine operator did not have all the requisite or required training documentation, and the, going back to the conduct at issue, what the plaintiff is really, what the appellant is really challenging is how, the how, of how MSHA inspectors inspect the training documentation, inspect the repair or maintenance practices, disseminating information, and inspect for potentially hazardous conditions. What if, what if, what if they did find a hazardous condition? What if, what if they, and we're at the motion of dismissing, so all they have to do is allege it, that they found a hazardous condition and ignored it. What is, what, how, what happens then? To answer your first question, yes, that would be a mandatory obligation. If they found a hazardous condition that rose to the level of being an imminent danger, which is a term of art, then, within the Mine Act, then there would have been a mandatory obligation for them to take certain action. But, with the piece that you weaved in there, Your Honor, under the government alleged a factual attack of subject matter jurisdiction, not a facial attack. We did a facial attack with regards to the first issue, but with the discretionary functioning exception, there was a factual attack. And so, the court, the district court, was allowed to consider matters outside the complaints and, in particular, consider the most recent investigation that was done in March of 2011, the most recent before the accident occurred in March of 2011. And there was no evidence, either through that report or any other evidence that the, that the appellant has put forth before the district court, that MSHA found a potentially hazardous condition in the mine before June 9th, 2011. You've just raised a term that I think I've never heard before, a factual attack on a motion to dismiss. That sounds like a summary judgment motion, but I, I've never heard of a factual attack on a motion to dismiss. Maybe there's a first time for everything, but. Your Honor, in the, in our brief, we cited to under 12B1, let me take a step back. We filed a 12B1 motion, not a 12B6 motion in this case. And the case cited at the Well, I don't want to use up your time. If it's in the brief, why don't you move on? I don't, you're just running out of time. Well, was this a, was this a factual attack by you or was it a facial attack? Under the discretionary function exception, we lodged a factual attack under the first Did you, did the judge order a hearing? The judge could order a hearing. Exactly, Your Honor. In the Osborne case. Did the judge order a hearing? The judge did not. Okay, thank you. Within their discretion to order an evidentiary hearing, if the judge deemed it necessary to resolve any factual disputes to resolve the subject matter jurisdictional issue related to the discretionary function. Your time has expired. Thank you. Mr. Green? Yes, Your Honor. I would like to go back to this issue of a factual attack. I think it's critical in this case to recognize that the motion that the duties that the MSHA inspectors had, they did not attack the specific factual allegations at issue. And you can look at that and see in the record that they, they attached the, the handbook, the program policy manual, and that sort of thing as exhibits. And so what they were doing is framing the issue for the court to consider as just what is the nature of these duties? Are they discretionary or not? If they're discretionary, do they involve policy judgment? So you believe it was a facial attack? It was, it was a fact. It's got to be one or the other under B1, facial or factual, right? Under Osborne and B1? It was a factual attack to the extent that it matters outside the pleadings, which were the, which went to the nature of the duties were, were considered and included, in other words, the handbook. So it was, it wasn't a factual attack on all the allegations that have been made in the complaint. It was a factual attack on the, the, the particular issue of what is the, the mine inspector's duties. And I'm not aware of any case where when there's a factual attack, the, uh, the plaintiff has to come back and basically prove all the merits of their case, uh, they all can get close to that under Osborne, right? You get the bottom line of Osborne is whether that's intertwined. If it's intertwined with the merits, you put it off to the trial, but it's up to the district court in the meantime, right? Yes. If it's, if it's intertwined with the merits and several of these issues are, it has to, there has to be a trial. Uh, but, but here, what we have is the way that the government framed this issue, the way they set it up in their motion was assuming the allegations in the complaint of facts are true. Uh, the nature of those duties is such that discretionary function exception applies. This is a facial attack, huh? I agree. Essentially. It's more of a facial attack than it is a factual attack. Correct. Um, let me, Well, Ed, I don't want to put words in your opposing counsel's mouth, but if I understood what his argument was, it was that if you could show that they found a serious safety violation and we'll assume, I think we're assuming that this method was a serious safety violation, it was not, they were obligated, was not discretionary to, to report that. Correct. And as I understand their factual attack was they'd never found it. And your argument then would be either they did find it, there's a fact dispute about that, or that their failure to find it is in and of itself negligence. Yes. There's a couple responses to that. Uh, first of all, yes, there's a factual dispute. It's bound up in the merits, which would require a trial. But they did not raise that issue until their reply brief. And so I did before the district court. And so I didn't have, that wasn't properly framed as a procedural matter. Uh, this court, district courts have all said it's not proper to raise arguments for the first time in a reply brief because it's unfair to the opposing party to be able to respond. Now on this issue of training, uh, I think the handbook is clear. It says all required documentation must be selected. But one, one point that, that bears mentioning is the fact that handbook also says that the mine inspectors must review the documentation and question random miners to verify that the documentation is accurate. Based on the reports that the inspection reports that were submitted by the government, there is zero evidence or indication that the miners were of the training documentation. And the handbook says that conversations like that must be recorded in the inspector's notes. So their absence is, is critical. And back to the negligence issue or the private analog issue. There was no requirement that we prove that the mine inspector or any safety inspector was rendering services to the miner. This court's recent case in Brown versus Davis said that the simple act of it being foreseeable that the, the defendant's conduct would create a risk or create a risk of harm and cause an ordinary person to take measures against it. Is that the bridge case? The bridge over the Mississippi river case? Is it Missouri law? It was here. Proceed. Yes. And so for those reasons, we ask that the court reverse and remand this case to the district court. Thank you. Thank you both for your arguments. Case number 17 dash five. I'm sorry. Two five, six, seven is submitted for decision.